UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-00329 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ASPEN TECHNOLOGY, INC., ANTONIO | : **SECURITIES EXCHANGE ACT OF** |
| PIETRI, JILL SMITH, DR. TOM | : **1934** |
| BRADICICH, DON CASEY, KAREN GOLZ, | : |
| AMAR HANSPAL, GARY E. HAROIAN, | : **JURY TRIAL DEMANDED** |
| ADRIANA KARABOUTIS, GEORGIA | : |
| KERESTY, ROBERT M. WHELAN, JR., and | : |
| R. HALSEY WISE, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against AspenTech, Inc., ("AspenTech or the "Company") and the members AspenTech's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between AspenTech and Emerson Electric Co. and its affiliates ("Emerson").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on January 11, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Emersub CXI, Inc., a direct wholly owned subsidiary of Emersub CX, Inc. ("New AspenTech"), will merge with and into AspenTech with AspenTech surviving as a wholly owned subsidiary of New AspenTech (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each AspenTech stockholder will receive 0.42 shares of New AspenTech shares (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 45% of the outstanding New AspenTech common stock and Emerson and Emerson Worldwide Inc. ("Emerson Sub") shareholders will own 55% of the outstanding New AspenTech common stock. Following the closing of the Proposed Transaction, New AspenTech and its subsidiaries will operate under the name "Aspen Technology, Inc."

3. As discussed below, Defendants have asked AspenTech's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to AspenTech's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of AspenTech stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Antonio Pietri has served as a member of the Board since October 2013 and is the President and Chief Executive Officer of the Company.

11. Individual Defendant Jill Smith has served as a member of the Board since April 2021 and as Chair of the Board since July 2021.

12. Individual Defendant Dr. Tom Bradicich has served as a member of the Board since January 2020.

13. Individual Defendant Don Casey has served as a member of the Board since 2004.

14. Individual Defendant Karen Golz has served as a member of the Board since March 2021.

15. Individual Defendant Amar Hanspal has served as a member of the Board since July 2020.

16. Individual Defendant Gary E. Haroian has served as a member of the Board since 2004.

17. Individual Defendant Adriana Karaboutis has served as a member of the Board since July 2020.

18. Individual Defendant Georgia Keresty has served as a member of the Board since April 2019.

19. Individual Defendant Robert M. Whelan, Jr. has served as a member of the Board since 2011.

20. Individual Defendant R. Halsey Wise has served as a member of the Board since 2016.

21. Defendant AspenTech a Delaware corporation and maintains its principal offices at 20 Crosby Drive, Bedford, Massachusetts 01730. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "AZPN."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>**The Proposed Transaction**</u>

24. AspenTech, together with its subsidiaries, provides asset optimization solutions in North America, Europe, the Asia Pacific, Latin America, and the Middle East. The Company operates in two segments, Subscription and Software, and Services and Other. It offers asset optimization software that optimizes asset design, operations, and maintenance in various industrial environments. The Company's software suites include aspenONE Engineering, aspenONE Manufacturing and Supply Chain, and aspenONE Asset Performance that are integrated applications, which allow end users to design process manufacturing environments, monitor operational performances, respond and adapt to operational changes, predict asset reliability and equipment failure, and manage planning and scheduling activities, as well as collaborate across these functions and activities. It also provides software maintenance and support, professional, and training services. The Company's customers comprise companies that are engaged in the process and other capital-intensive industries, such as energy, chemicals, engineering, and construction, as well as pharmaceuticals, food and beverage, transportation, power, metals and mining, pulp and paper, and consumer packaged goods. AspenTech was founded in 1981 and is headquartered in Bedford, Massachusetts.

25. On October 11, 2021, the Company and Emerson jointly announced the Proposed Transaction:

> ST. LOUIS, Missouri and BEDFORD, Massachusetts – October 11, 2021 – Emerson (NYSE: EMR) and AspenTech (NASDAQ: AZPN) today announced that the companies have entered into a definitive agreement to contribute Emerson's industrial software businesses – OSI Inc. and the Geological Simulation Software business – to AspenTech to create a diversified, high-performance industrial software leader with greater scale, capabilities and technologies ("new AspenTech"). Emerson will also contribute $6.0

billion in cash to new AspenTech, which will be received by AspenTech shareholders, in exchange for a 55% stake in new AspenTech. New AspenTech will offer a highly differentiated industrial software portfolio with the capabilities to support the entire lifecycle of complex operations across a wide range of industry verticals, including design and engineering, operations, maintenance and asset optimization.

**Accelerating Emerson's Industrial Software Strategy**

The transaction accelerates Emerson's software investment strategy as the company continues to build a higher growth, more diversified and sustainable portfolio, by creating an industrial software company with immediate scale and relevancy in a fast-paced and evolving market. The new company, which will retain the name AspenTech, enables Emerson to realize significant synergies and accelerate its software strategy to drive meaningful value creation. Majority ownership position in a highly valued, pure-play industrial software leader will give Emerson the platform and flexibility to strategically deploy capital for growth through continued investment and M&A. The transaction continues Emerson's long history of delivering shareholder value. New AspenTech will be fully consolidated into Emerson financials and is expected to be accretive to adjusted EPS after year one.

**Management Comments**

"We saw an attractive opportunity to accelerate our software strategy to capitalize on the rapidly evolving industrial software landscape and advance Emerson's high value portfolio journey," said Lal Karsanbhai, President and Chief Executive Officer of Emerson. "Our customers are increasingly seeking partners to help realize stronger performance as they automate workflows in their facilities to optimize operations. New AspenTech will become an engine for both acquisition and organic growth."

"Today's announcement marks an exciting new era. This transaction enables us to advance our position as a premier, highly diversified industrial software leader poised for significant growth, strong financial performance and a vehicle to drive future software acquisitions, while providing immediate cash value to AspenTech shareholders," said Antonio Pietri, President and Chief Executive Officer of AspenTech, who will lead new AspenTech. "The new AspenTech will benefit from a larger and more diversified market, which we will be able to serve with a comprehensive software portfolio, an expanded global sales channel and an even stronger

balance sheet reinforced by Emerson. Additionally, this transaction expands our ability to support customers' global sustainability ambitions."

Emerson and AspenTech Creating a High-Performance Software Leader with Scale and Technology

Following completion of the transaction, new AspenTech will have a global footprint with strong go-to-market capabilities and more than 3,700 employees. On a pro forma basis, new AspenTech is expected to have FY22 annual revenues of $1.1 billion, adjusted EBITDA of approximately $490 million and achieve double-digit annual spend growth through 2026. New AspenTech will have a high growth, predictable business model with 86% of pro forma revenues from software and 14% of revenues from services.

The new AspenTech will be an attractive environment for highly sought-after software talent, offering career opportunities to innovate in a technology-driven culture.

Benefits of the transaction include:

- New AspenTech Portfolio Spans the Full Asset Lifecycle: The new AspenTech will provide differentiated offerings in Industrial AI and asset optimization with Emerson's grid modernization technology, advanced distribution management systems and geological simulation software. With Emerson's strong capabilities, new AspenTech will have an end-to-end software offering and be even better positioned to help customers improve their safety, reliability and production while reducing emissions.
- Diversified End Markets with Blue-Chip Customer Base: With the additional capabilities of OSI Inc. and Geological Simulation Software, new AspenTech will expand into new, high growth markets. AspenTech recently announced a commitment to invest $35 million in life sciences and metals and mining that will help accelerate adoption of new AspenTech's solutions. The addition of OSI Inc. will enable new AspenTech to develop its transmission and distribution offering to support power grid modernization and ensure grid reliability. This expanded software capability will build on Emerson's global life sciences expertise comprised of 3,000 installed control systems, 30 locations and nearly 1,000 project engineering and consulting employees dedicated to active life sciences projects.

New AspenTech's software is also scalable and adaptable to the emerging green energy markets and will be well-positioned to

support blue-chip customers' sustainability needs in current and new energy transition markets such as biofuels, hydrogen and carbon capture.

- Significant Revenue and Cost Synergy Opportunities: Over time, new AspenTech is expected to drive significant revenue and synergy opportunities by transitioning OSI Inc. and the Geological Simulation Software business to a token and subscription-based business model, which AspenTech has successfully achieved for its existing portfolio. The token model enables customers to access a broader suite of software modules. The transaction will enhance the two companies' existing commercial alliance and increase collaboration between Emerson and new AspenTech as they share technologies, drive innovation and develop new products through their nearly 1,400 software engineers.

  New AspenTech expects to deliver multiple, specific revenue growth opportunities by leveraging Emerson's $120 billion global installed base and its sales force of nearly 12,000 salespeople. Cost synergies are expected to be driven by scale efficiencies, including shared R&D and SG&A organizations, overhead and spend optimization. New AspenTech expects to achieve $110 million of total EBITDA synergies by year five, of which $40 million are from cost savings. Emerson also expects to benefit from the enhanced commercial alliance with new AspenTech, driving $45 million of EBITDA synergies.

- Best-in-Class Financial Profile: New AspenTech will be a leading player in the industrial software market with scale and strong free cash flow generation to drive innovation and growth. On a pro forma basis, the company is expected to deliver double-digit revenue and free cash flow growth over the next five years. Over time, as new AspenTech delivers on its synergy opportunities and completes the business model transitions of the OSI Inc. and Geological Simulation Software businesses, it is expected to deliver a higher software and recurring revenue mix and stronger adjusted EBITDA and free cash flow margins.
- Strong Platform for Future Acquisitions: Mergers and acquisitions will be a key pillar of new AspenTech's go-forward strategy given the continued evolution and consolidation of the industrial software industry. With an expanded solution set, broader global footprint and larger installed base, new AspenTech will have access to a wider range of acquisition and investment targets across industries, products and geographies. With greater financial flexibility and the support of a well-capitalized Emerson, new AspenTech will have the scale and financial capacity to pursue and complete larger

strategic transactions, quickly integrate targets and realize synergies.

**Terms of the Transaction**

Under the terms of the agreement, AspenTech shareholders will receive approximately $87 per share in cash and 0.42 shares of common stock of the new AspenTech, a newly formed company, for each share of AspenTech common stock they own, which implies total consideration of approximately $160 per AspenTech share, and a total transaction equity value of approximately $11 billion before synergies. The total implied per share consideration amount represents a premium of approximately 27% compared to AspenTech's closing stock price on October 6, 2021, the last trading day prior to media speculation regarding a potential transaction, and a premium of approximately 26% to AspenTech's 30-day VWAP on October 6, 2021. Including expected synergies, the total value increases to $176 per share, a 40% premium compared to AspenTech's closing stock price on October 6, 2021. Upon completion of the transaction, Emerson will own 55% of the new AspenTech on a fully diluted basis and AspenTech shareholders will own 45%.

**Conclusion of Strategic Process**

Following a comprehensive review of AspenTech's strategic opportunities to increase shareholder value, AspenTech's Board concluded that Emerson is the ideal strategic partner for AspenTech and that this transaction structure provides the best opportunity to drive continued growth. Additionally, the transaction delivers immediate cash value to AspenTech shareholders, while also enabling them to participate in the long-term upside of new AspenTech.

**New AspenTech Headquarters, Leadership and Governance**

New AspenTech will be headquartered in Bedford, Massachusetts and Antonio Pietri, the current CEO of AspenTech, will be the CEO.

Following the close of the transaction, the Board of Directors of new AspenTech will consist of nine directors, five of whom will be designated by Emerson. Jill Smith, the current Chair of the Board of Directors AspenTech, will serve as Chair of the Board of Directors of new AspenTech.

**Path to Completion**

The transaction has been approved unanimously by Emerson's Board of Directors, and by unanimous vote of those AspenTech directors present (one director was absent, but confirmed full support). The transaction is expected to close in the second calendar quarter of 2022 and is subject to approval by AspenTech shareholders, regulatory approvals and other customary closing conditions. Upon completion of the transaction, new AspenTech will trade on NASDAQ under ticker symbol AZPN.

\* \* \*

**Advisors**

Goldman Sachs & Co. LLC and Centerview Partners LLC are serving as financial advisors to Emerson, and Davis Polk & Wardwell LLP is serving as legal counsel. J.P. Morgan Securities LLC is serving as financial advisor to AspenTech, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

\* \* \*

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that AspenTech's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Registration Statement**

27. On January 11, 2022, AspenTech and Emerson jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by J.P. Morgan in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Emerson Projections") and provided them to the Board and J.P. Morgan by management of both AspenTech and Emerson with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and J.P. Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, which includes the AspenTech February 19 Projections – Upside Case, AspenTech May 10 Projections, AspenTech September 7 Projections, and AspenTech Final Projections; and the Emerson Projections, which include the Adjusted Emerson Industrial Software Business Projections, Adjusted Projected Synergies and Pro Forma Projections, and the Pro Forma Projections, the Registration Statement provides values for non-

GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2025: EBITDA; Adjusted EBITDA; and Unlevered Free Cash Flows as calculated by each of the Company's and Emerson's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

32. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most

comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Emerson*

33. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

34. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by J.P. Morgan in the analysis.

35. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of Emerson; (ii) line items used to calculate Emerson's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the perpetuity growth rate of 4.5% to 5.5%; and (iv) the inputs and assumptions underlying the discount rates ranging from 8.50% to 9.50%.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for AspenTech*

36. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

37. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by J.P. Morgan in the analysis.

38. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of the Company; (ii) line items used to calculate

AspenTech's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the perpetuity growth rate of 4.5% to 5.5%; and (iv) the inputs and assumptions underlying the discount rates ranging from 8.50% to 9.50%.

39.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of AspenTech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of AspenTech, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of AspenTech, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of AspenTech, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.       Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 13, 2022              **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*